UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JUAN SEBASTIAN DIAZ SAAVEDRA,
*individually and on behalf of others similarly situated,*

                        Plaintiff,

        -against-

DOM MUSIC BOX INC. (D/B/A Music Box) and
EDISON ORTIZ,

                    Defendants.      x
------------------------------------------------------------------------

**REPORT AND
RECOMMENDATION**

21-CV-6051
(Vitaliano, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Juan Sebastian Diaz Saavedra commenced this action on October 29, 2021, alleging that his former employer, Dom Music Box Inc., d/b/a Music Box ("Music Box" or "Corporate Defendant"), and its owner and operator Edison Ortiz ("Defendant Ortiz") (collectively, "Defendants") failed to pay him at the applicable minimum wage for work performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(d) *et seq.*, and New York Labor Law ("NYLL") §§ 652(1) *et seq.*, failed to provide him with appropriate written notices in violation of NYLL § 195(1), failed to provide him with appropriate wage statements in violation of NYLL § 195(3), and failed to remit timely payments in violation of NYLL § 191. *See generally* Dkt. No. 1 ("Compl.").

Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, United States District Judge, is Plaintiff's Second Motion for Default Judgment. Dkt. No. 27; *see also* August 22, 2023 Referral Order.

For the reasons set forth below, the undersigned respectfully recommends that the district judge grant, in part, Plaintiff's motion for default judgment and that judgment be entered against

Defendants, jointly and severally, in the amount of $181,682.04, which includes: (a) $68,557.50 for unpaid minimum wage; (b) $68,557.50 in liquidated damages; (c) $42,160.04 in prejudgment interest to increase by $16.90 per day until the entry of judgment; (d) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (e) attorneys' fees of $1,930.00; and (f) costs of $477.00.  The Court further recommends that Plaintiff should be awarded an automatic increase of 15 percent as provided by New York Labor Law § 198(4).

## I.    **Background**

### A.    **Factual Allegations**

The following facts are taken from the Complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this motion.  *See Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *1 (E.D.N.Y. Sept. 29, 2023) (citing *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015)).

Defendant Dom Music Box Inc. is a New York corporation that, through or with Defendant Ortiz, owns, operates, and controls Music Box, a bar located at 40-08 74th Street in Jackson Heights, Queens, New York.  Compl. ¶¶ 2, 17-22.  At all relevant times, Music Box was "directly engaged in interstate commerce," used goods and supplies produced outside the State of New York, and—from 2015 through 2021—had a gross annual sales volume "of not less than $500,000."  *Id.* ¶¶ 28-29, 34.  Plaintiff, Mr. Saavedra, was employed as a bartender at the Music Box.  *Id.* ¶¶ 4, 15, 30, 32-33.

Defendants employed Plaintiff as a bartender in 2010.  *Id.*  Defendants "possessed substantial control over Plaintiff Diaz's working conditions, and over the policies and practices with respect to [his] employment and compensation[.]" *Id.* ¶ 23.  Specifically, Defendant Ortiz

controlled the terms and conditions of employment for Music Box employees, including Plaintiff, by "determin[ing] wages and compensation", establishing employee schedules, "maintain[ing] employee records", and retaining the authority to hire and fire employees. *Id.* ¶¶ 19, 27. "Plaintiff Diaz was employed by Defendants from approximately 2010 until on or about October 16, 2019 and from approximately August 2021 until on or about September 12, 2021." *Id.* ¶ 32.

At issue in the Complaint are two distinct employment periods: October 2015 until on or about October 16, 2019 and August 2021 until on or about September 12, 2021. *Id.* ¶¶ 38-39. From October 2015 until on or about October 16, 2019, Plaintiff worked at Music Box five nights per week—from 10:00 p.m. to 4:00 a.m.—totaling thirty hours per week. *Id.* ¶ 36. From August 2021 until on or about September 12, 2021, Plaintiff "typically worked the same shift" one night per week—totaling six hours per week. *Id.* ¶ 37. Plaintiff was not responsible for keeping track of this time, and Defendants did not use punch cards (or other similar means) to accurately track or record Plaintiff's time. *Id.* ¶¶ 44, 54.

Plaintiff alleges that he was not paid for work performed and services rendered during the employment period ranging from October 2015 to October 2019. *Id.* ¶¶ 38-39, 48-50, 55. Plaintiff further alleges that he was "only paid" $30 for three nights of work during the period of August 2021 to September 2021. *Id.* ¶ 40. Indeed, while Plaintiff acknowledges that he received tips during each employment period, such tips were included by Defendants "as an offset for wages." *Id.* ¶ 42. Defendants did not maintain a record of such tips, did not account for tips in any daily or weekly accounting of Plaintiff's wages, and did not provide Plaintiff with notice that the tips received would be used to offset any earned wages. *Id.* ¶¶ 42–43, 45, 51-53.

Specifically, Plaintiff alleges that Defendants failed to provide him with any notice with respect to his wages, either in the form of a time-of-hire wage notice, an annual wage notice, or a

3

poster displaying state and federal wage-and-hour requirements. *Id*. ¶¶ 45, 47, 56, 61, 78. Defendants also purportedly failed to provide Plaintiff with accurate wage statements throughout his employment. *Id.* ¶¶ 46, 60, 81. Plaintiff alleges that Defendants intended "to disguise the actual number of hours . . . worked, and to avoid paying [Plaintiff] properly for his full hours worked," and failed to remit payment "pursuant to a corporate policy of minimizing labor costs and denying employees compensation." *Id.* ¶¶ 48–61.

### B.    Procedural History

Plaintiff filed the Complaint on October 29, 2021. *See* Dkt. No. 1. On November 1, 2021, the Clerk of Court issued summonses for all Defendants. Dkt. No. 5. Plaintiff properly served the Corporate Defendant at the office of the Secretary of State of the State of New York on January 18, 2022. Dkt. No. 10. The Corporate Defendant's answer was due on February 8, 2022. *Id.* Plaintiff properly served Defendant Ortiz on January 25, 2022. Dkt. No. 12. Defendant Ortiz's answer was due on February 15, 2022. *Id.* No answers or responses have been interposed by Defendants.

On February 22, 2022, the Honorable Ramon E. Reyes, Jr., then-United States Magistrate Judge, ordered, *inter alia*, that "[n]o later than March 8, 2022, one of the following events must occur [on pain of dismissal for failure to prosecute]: (a) the parties must file a stipulation extending the defendants time to answer, (b) the plaintiff must file a motion for the entry of a notation of default or (c) the defendants must file an answer." *See* Electronic Order dated February 22, 2022. On February 23, 2022, Plaintiff requested a Certificate of Default from the Clerk of Court. Dkt. No. 13. On March 1, 2022, the Clerk of Court entered a default noting that Defendants have "failed to appear or otherwise defend this action." Dkt. No. 14. On June 7, 2022, then-Magistrate Judge

4

Reyes ordered Plaintiff to move for default judgment "on or before June 21, 2022." *See* Electronic Order dated June 7, 2022.

On June 21, 2023, Plaintiff filed a Motion for Default Judgment styled "MOTION for Default Judgment of *Defendants Edison Ortiz and Dom Music Box Inc.*" (Dkt. No. 16 (capitalization and emphasis in original)) containing (1) a Notice of Motion (Dkt. No. 16); (2) a copy of the Complaint (Dkt. No. 16-2); and (3) supporting affidavits and exhibits (*id.*). On December 5, 2022, then-Magistrate Judge Reyes issued a Report and Recommendation recommending that Plaintiff's Motion for Default Judgement be denied without prejudice. Dkt. No. 18; *see also Diaz Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (RER), 2022 WL 20655809, at *1 (E.D.N.Y. Dec. 5, 2022).

In addition to the above referenced procedural deficiencies, the Court identified two additional substantive issues in Plaintiff's motion. *Diaz Saavedra*, 2022 WL 20655809, at *6 (E.D.N.Y. Dec. 5, 2022). First, the Court noted that "Plaintiff does not supply the Court with sufficient information to calculate damages with respect to his minimum wage claims." *Id.* Second, the Court noted that "Plaintiff does not clearly state a wage notice claim, and in any event cannot recover the statutory maximum that he seeks for such a claim." *Id.*

On July 7, 2023, United States District Judge Eric N. Vitaliano adopted the Report and Recommendation in its entirety—denying the Motion for Default Judgment without prejudice. *See* Text Order adopting Report and Recommendations, dated July 7, 2023.

On August 16, 2023, Plaintiff filed a second Motion for Default Judgment against the Defendants containing a (1) a Notice of Motion (Dkt. No. 27); (2) a copy of the Complaint (Dkt. No. 28-1); (3) supporting affidavits and exhibits (Dkt. No. 26, 28, 30); and (4) a Memorandum of Law (Dkt. No. 29). Plaintiff seeks default judgment "jointly and severally" for unpaid minimum

wages in the amount of $68,557.50; $5,300 in statutory damages for failing to provide a wage notice or a wage statement in violation of NYLL §§ 195(1) and 195(3); liquidated damages in the amount of $68,557.50 for his unpaid minimum wages; prejudgment interest for unpaid minimum wages totaling $34,729.82; and attorneys' fees and costs totaling $3,974.50—amounting in all to $181.119.31.  *See* Dkt. Nos. 28-10, 29.

On August 21, 2023, Plaintiff filed an Affidavit of Service of the "Motion for Default Judgment, with Exhibits (Dkt. No. 28)" and the Memorandum of Law in Support of Plaintiff's Motion.  Dkt. No. 30.  On August 22, 2023, the second Motion for Default Judgment was referred to Judge Reyes for a Report and Recommendation.  *See* August 22, 2023 Referral Order.  On November 9, 2023, this case was reassigned to the undersigned.  *See* Docket Entry dated November 9, 2023.

## II.    Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *see Esquivel*, 2023 WL 6338666, at *3 ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment", the Court is

6

empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

"In the context of a motion for default judgment on FLSA and NYLL claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'"  *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG), 2023 WL 2583856, at *6 (E.D.N.Y. Mar. 21, 2023) (quoting *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. Sep. 24, 2012)); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. Sep. 30, 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at \*3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen*, 2023 WL 2583856, at \*7 (quotations and citation omitted).

## III.  Discussion

### A.  Jurisdiction and Venue

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 1:17-cv-7294 (KAM)(CLP), 2019 WL 1367751, at \*4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

#### i.  *Subject Matter Jurisdiction*

Federal district courts have original subject-matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States." 28 U.S.C. § 1331. Plaintiff's first cause of action alleges a violation of the minimum wage provisions of the FLSA. *See* Compl. ¶¶ 65-71. Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous. *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022). This action thus arises under the laws of the United States, which gives the Court subject-matter jurisdiction over this action. *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court also has supplemental jurisdiction over Plaintiff's NYLL claims, namely Plaintiff's second and fifth causes of action. Supplemental jurisdiction extends to state law claims

that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).  Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (*quoting Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).  Here, supplemental jurisdiction clearly extends to Plaintiff's second and fifth claims, which seek to recover for unpaid minimum wages and failure to remit timely payments under the NYLL, because they virtually overlap with Plaintiff's first claim, which seeks to recover for the same violations under the FLSA.  *See* Compl. ¶¶ 72-76, 83-85.

The Court, however, ultimately lacks subject-matter jurisdiction over, and respectfully recommends dismissal without prejudice, Plaintiff's third and fourth cause of action under the NYLL (*id*. ¶¶ 77-82) because Plaintiff lacks standing to pursue those claims in federal court. Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies."  U.S. Const. Art. III, § 2, cl. 1.  A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To have Article III standing, the plaintiff must have suffered an injury-in-fact likely caused by the defendant's allegedly unlawful conduct and redressable by a favorable court decision.  *Id*.  The injury must be "concrete and particularized," which means some specific harm to the plaintiff beyond the defendant's technical violation of a statutory mandate.  *Id*.  Standing is not "dispensed in gross."  *Id*. at 431.  Rather, the plaintiff must show standing separately for each claim asserted.  *Id*.

9

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (emphasis in original). While a Court may hear state claims if they "derive from a common nucleus of operative facts" (*id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))), a Court cannot "discern of speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims." *Id.*

Here, Plaintiff did not allege facts linking any legally cognizable injury that he personally experienced to Defendants' failure to provide wage statements and wage notices under the NYLL. The Complaint merely alleges that Defendants failed to comply with these statutory mandates. *See* Compl. ¶¶ 45-47, 56, 77-82; Dkt. No. 29, at 7. Plaintiff has offered no theory as to *how* he was injured by Defendants' failure to provide the required documents. Instead, Plaintiff argues that the reason his employers failed to comply with the statute is to "disguise the actual number of hours Plaintiff Diaz (and similarly situated individuals) worked, and to avoid paying Plaintiff Diaz properly for his full hours worked." Compl. ¶ 57. But "an employer's intent has no bearing on whether the employer's conduct caused the plaintiff to sustain an actual and concrete injury." *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023). Without a concrete show of harm, Plaintiff's argument is entirely speculative; indeed, the hypothetical chain of events in *Quieju* is particularly instructive here:

> [a]lthough plaintiff assumes his conclusion without analysis, what he is really saying is that *if* defendants had given him the required documents, those documents *would have* informed him that he was not being paid his required wages. Enlightened by that knowledge, plaintiff then *would have* demanded his required wages. Having made such a demand, defendants *would have* then paid him his required wages, and plaintiff *would have* avoided the injury he suffered by the failure to properly pay him. This implicit analysis apparently leads to plaintiff's

conclusion that he has suffered an actual and concrete injury by reason of his employer's violation of [NYLL] § 195.

*Quieju*, 2023 WL 3073518, at *2 ( (emphasis in original) (dismissing NYLL §195(1) and (3) claims for lack of standing).

"The injury that plaintiff suffered (i.e., defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law." *Id.* Without some tangible downstream harm flowing from those statutory violations, Plaintiff has not shown that he suffered a concrete injury resulting from Defendants' violations of the NYLL's wage statement and wage notice requirements. Thus, Plaintiff lacks Article III standing to pursue those claims in this Court. Multiple courts in this district have reached similar results after the Supreme Court's decision in *TransUnion* clarified the rules regarding standing, beyond bare allegations of statutory violations. *See, e.g.*, *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *11 (Vitaliano, J.) (Henry, M.J.) (E.D.N.Y. Sept. 29, 2023) *report and recommendation adopted*, (E.D.N.Y. Nov. 30, 2023) (dismissing Plaintiff's NYLL wage notice and wage statement claims without prejudice); *Quieju v. La Jugueria Inc.*, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023); *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023); *Sevilla v. House of Salads One LLC*, No. 1:20-CV-6072(PKC)(CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (holding that "it is not clear that [such] policies led to an 'injury' that can be recognized by a federal court" (citations omitted)); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [the d]efendants' failure to provide statutory notices under the NYLL, so she lacks

standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action[.]"); *Perez v. Postgraduate Ctr. for Mental Health*, No. 19-CV-931 (EK) (PK), 2021 WL 3667054, at *7 (E.D.N.Y. Aug. 18, 2021) (finding that the plaintiff lacked Article III standing for a claim alleging that the content of his wage notices violated the NYLL because of an inaccuracy because "not all inaccuracies cause harm or present any material risk of harm").  Thus, because Plaintiff lacks standing, the Court lacks subject-matter jurisdiction over his wage notice and wage statement claims under the NYLL as asserted in Counts Three and Four.

Accordingly, the Court respectfully recommends that Plaintiff's NYLL wage notice and wage statement claims should be dismissed without prejudice.

## ii. *Personal Jurisdiction*

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted).

Here, the Court has personal jurisdiction over the Defendants.  First, Plaintiff properly served Dom Music Box Inc., d/b/a Music Box, a New York company, by delivering copies of the Summons and Complaint to the New York Secretary of State.  *See* Dkt. No. 10; *see also* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1).  Plaintiff also properly served Defendant Ortiz by personal service.  *See* Dkt. No. 12; *see also* Fed R. Civ. P. 4(e)(1)–e(2)(A); N.Y. C.P.L.R. § 308(1).  "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction

in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016). Defendant Dom Music Box Inc. is a New York corporation with its principal place of business in Queens, New York. *See* Compl. ¶¶ 17-18. Defendants share a place of business in Queens, New York. New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301. New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals "who transact business within the state" so long as "the cause of action arises from that transaction." *Licci*, 673 F.3d at 60; *see also* N.Y. C.P.L.R. § 302(a)(1). Defendant Ortiz "serves or served as owner, manager, principal, or agent of [the Corporate Defendant]" and thus, he transacted business in New York. *See* Compl. ¶ 3.

Accordingly, Plaintiff satisfies the requirements for personal jurisdiction.

## B. Procedural Requirements

Before the court enters a default judgment, a plaintiff must show that Entry of Default was appropriate, which itself requires a showing that the defendant was effectively served with process. *Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summary order). Local Civil Rule 55.2 imposes the additional requirements that the plaintiff attach certain materials to the motion and file proof that all motion papers were mailed to the defendant.

### i.    *Service of Process*

The Court finds that Plaintiff properly served the Summons and Complaint on each defendant.  Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made.  As to the Corporate Defendant, state law permits a party to effect service by delivering the summons and complaint to the New York Secretary of State as an agent of the corporation.  N.Y. Bus. Corp. Law § 306(b)(1).  Here, Plaintiff served Defendant Music Box with notice of this action by his process server delivering the Summons and Complaint to an agent in the Office of the Secretary of State authorized to accept service for Defendant.   Dkt. No. 10.   Thus, Plaintiff properly served Defendant Music Box.

As to Defendant Ortiz, state law permits a party to effect service by (1) delivering the summons within the state to a person of suitable age and discretion at the actual place of business of the person to be served and (2) mailing the summons by first class mail to the person to be served at his or her actual place of business, so long as the delivery and mailing occur within twenty days of each other.  N.Y. C.P.L.R. § 308(2).  Here, Plaintiff served Ortiz with notice of this action by his process server delivering the Summons and Complaint to Ortiz's actual place of business at 40-08 74th Street, Jackson Heights, New York, 11374, and leaving those documents with a person of suitable age and discretion.  Dkt. No 12.  Plaintiff's process server also mailed a copy of the Summons and Complaint by first class mail to the same address.  *Id.*  Thus, Plaintiff properly served Defendant Ortiz.

### ii.    *Entry of Default*

The Court next finds that the Clerk of Court properly entered a Certificate of Default against each defendant.  Because the Corporate Defendant was served on January 18, 2022, it was

required to answer or otherwise respond to the Complaint by February 8, 2022. *See* Dkt. No. 10; Fed. R. Civ. P. 12(a)(1)(A)(i). Because Defendant Ortiz was served on January 25, 2022, he was required to answer or otherwise respond to the Complaint by February 15, 2022. *See* Dkt. No. 12; Fed. R. Civ. P. 12(a)(1)(A)(i). When the Defendants failed to do so, Plaintiff filed a request for an Entry of Default and the other materials required by Local Rule 55.1. Dkt. No. 13. The Clerk of Court entered the Defendants' defaults on March 1, 2022. Dkt. No. 14.

### iii. *Local Civil Rule 7.1*

Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default (1) a notice of motion specifying "the applicable rules or status pursuant to which the motion is brought", (2) a memorandum of law setting forth "the cases and other authorities relied upon in support of the motion, and (3) supporting affidavits and exhibits containing "factual information and portions of the record necessary for the decision of the motion." *See* L. Civ. R. 7.1. Plaintiff complied with the procedural requirement enshrined in Local Civil Rule 7.1 by filing a notice of motion (Dkt. No. 27), a memorandum of law (Dkt. No. 29), and affidavits and exhibits in support of the motion (*see generally* Dkt. No. 28).

### iv. *Local Civil Rule 55.2*

Local Civil Rule 55.2(b) requires that a plaintiff attach to a motion for default the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment. Local Civil Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant. Plaintiff complied with the procedural requirement enshrined in Local Civil Rule 55.2 by mailing all papers to the Corporate Defendants' last known business address and to Defendant Ortiz's last known residence.

v.       *The Servicemembers Civil Relief Act*

The Servicemembers Civil Relief Act requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).

Here, Plaintiff complied with this statutory requirement by submitting an affidavit indicating that Defendant Ortiz is not in military service. Dkt. No. 26. Plaintiff also provided the Court with a "Department of Defense Status Report Pursuant to Servicemembers Civil Relief Act" indicating same in support of the affidavit. *Id*. The Status Report is dated August 8, 2023—thus reflecting that the affidavit is based on an investigation conducted after the filing of the Complaint. *Id*.; *see generally* Dkt. No. 1.

In light of the above, the jurisdictional and procedural prerequisites to enter a default judgment have been met. The Court now turns to whether Plaintiff's well-pleaded factual allegations establish Defendants' liability as a matter of law.

16

### C.    Liability

#### i.    *Threshold Requirements*

As a threshold matter, Plaintiff must show an employer-employee relationship between himself and Defendants to prevail on his FLSA and NYLL claims.  *Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056 (RER), 2022 WL 4586100, at *5 (E.D.N.Y. Sept. 29, 2022).  Because district courts in the Second Circuit interpret the NYLL's definition of "employer" coextensively with the definition the FLSA uses, the Court analyzes this threshold issue based on the FLSA's definitions. *Jiang v. D&S Wedding Planner Inc.*, No. 22-CV-643(MKB)(CLP), 2023 WL 6307813, at *5 (E.D.N.Y. Sept. 28, 2023).

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  The Second Circuit uses a four-factor test based on "economic reality" to determine whether an employer-employee relationship exists.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).  The test asks whether the defendant (1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedules or conditions of employment, (3) determined the employee's rate and method of payment, and (4) maintained employment records.  *Id*. at 104-05.  The court must consider the totality of the circumstances, and no single factor is dispositive.  *Id*. at 105.

Here, Plaintiff has shown that he had an employer-employee relationship with Defendants. Plaintiff alleges that he was employed by Music Box.  Compl. ¶¶ 4, 15, 30,32–33.  Plaintiff alleges that each defendant had the power to hire and fire employees at Music Box.  *Id*. ¶¶ 19, 27.  Plaintiff further alleges that Defendant Ortiz, as Music Box's owner and operator, set Plaintiff's work schedules and that each defendant controlled the conditions of Plaintiff's employment.  *Id*.

Plaintiff also alleges that each defendant determined Plaintiff's rate and method of payment. *Id.* Finally, Plaintiff alleges that Ortiz maintained Music Box's employment records. *Id.*

Thus, all four *Irizarry* factors support a finding that as a matter of economic reality, Plaintiff had an employer-employee relationship with each defendant. By the same token, the Court finds that Defendants are jointly and severally liable for the FLSA and NYLL violations discussed below. *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685–66 (S.D.N.Y. 2011) (finding allegations that defendant was an "owner, partner, or manager" of plaintiff's corporate employer was enough to qualify him as an FLSA and NYLL employer and to impose joint and several liability with corporate defendant).

Plaintiff has also shown that he is not exempt from the FLSA. The FLSA does not extend minimum wage or overtime protections to an employee in a "bona fide executive, administrative, or professional capacity ... or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 (2d Cir. 2020). Here, Plaintiff alleges that he worked at Music Box as a "bartender." Compl. ¶ 33. As a matter of law, such duties do not exempt employees from the FLSA's minimum wage or overtime protections. *See Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) ("Plaintiffs' complaint and supporting declarations establish that as a matter of law, the Plaintiffs' jobs as Bakers and Helpers constitute non-exempt employment under the FLSA."); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-486, 2011 WL 1431978, at *3-4 (E.D.N.Y. Apr. 14, 2011) (finding that the FLSA regulations did not exempt the plaintiff from the FLSA's protections due to his position as a cook, which did not make him an "executive employee," a "creative professional," or a "learned

18

professional"*); Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (certifying an FLSA class including servers, bus-persons, food preparers and dishwashers); *Fasanelli v. Heartland Brewery*, Inc., 516 F. Supp. 2d 317, 320-22 (S.D.N.Y. 2007) (stating that waiters, bartenders, runners and/or bussers were non-exempt employees under the FLSA). Thus, Plaintiff's duties do not render him employees exempt from FLSA's minimum wage and overtime protections.

Finally, Plaintiff has satisfied the FLSA's interstate commerce requirement. The FLSA requires that the plaintiff be either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a).[1] "To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'" Brito, 2022 WL 875099, at *7 (citing 29 U.S.C. § 203(s)(1)(A)).

Here, Plaintiff alleges the statutory requirements without providing any specific examples. Compl. ¶¶ 28-29. Nonetheless, based on Plaintiff's allegations that Music Box has an annual gross sales volume of at least $500,000 and has employees "directly engaged in interstate commerce," (Compl. ¶¶ 28-29), the Court can reasonably infer that at least some of the equipment, goods, materials, and supplies used by Music Box have moved or engaged in interstate or international commerce. *See Kilmchak v. Cardona, Inc.*, No. 2:09-CV-4311 (MKB) (ARL), 2014 WL 3778964, at *5 (E.D.N.Y. Jul. 31, 2014) (noting that several courts in this district have inferred

---

[1] The NYLL lacks this requirement. *Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

FLSA enterprise coverage based on the nature of the defendant's business notwithstanding such pleading deficiencies and collecting cases).

Finding these threshold requirements satisfied, the Court proceeds to consider whether Defendants' alleged conduct violated the FLSA and NYLL.

### ii.   *Minimum Wage*

The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works. *Zabrodin v. Silk 222, Inc.*, No. 22-CV-7064 (KAM)(MMH), 2023 WL 8009319, at *8 (E.D.N.Y. Nov. 20, 2023). Between October 2019 and August 2021, there was a break in Plaintiff's employment at Music Box for which no minimum wage payback is being sought. *See* Compl. ¶¶38-40. Plaintiff's employment at Music Box resumed in August 2021 and terminated "on or about September 21, 2021." *Id.* at ¶ 40. "Because Plaintiffs who bring claims under both the FLSA and NYLL recover under the statute that provides the greater measure of damages," the Court applies the higher NYLL minimum wage. *Zabrodin*, 2023 WL 8009319, at *8 (citing *Fermin v. Las Delicias Peruanas Rest.*, Inc., 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015)).

The plaintiff has the burden to prove that he was improperly compensated for the work he performed and the defendant had actual or constructive knowledge of the work. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate. *Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019). An employer has a non-delegable duty to maintain accurate records of its employees' hours. *Kuebel*, 643 F.3d at 363. Thus, it would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's

employment records through discovery.  *See Cabrera*, 412 F. Supp. 3d at 181; *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.") Moreover, Plaintiff here states that he was not required to keep track of his time and that he is unaware of Defendants having used any time tracking device that would have reflected actual hours worked, (*see* Compl. ¶¶ 44, 54), so more precise evidence may not even exist.  *See Zabrodin*, 2023 WL 8009319, at *8.

The gravamen of Plaintiff's Complaint appears to be that his bartending tips were being improperly used as an offset for wages.  Compl. ¶ 42.  In other words, during the relevant employment periods, Plaintiff was not paid a minimum wage and was instead expected to survive from his tips.  Such employer-employee arrangements are permissible under the FLSA and are known as "tip credits."  *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 182 (E.D.N.Y. 2019).  Both the FLSA and the NYLL contain "tip credit" provisions, which "permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage."  *Id.* (quoting *Inclan v. N.Y. Hosp. Grp.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015)).

To be eligible for a "tip credit" under the FLSA, an employer must "satisfy two conditions: (1) inform the employee of the 'tip credit' provision . . . and (2) permit the employee to retain all of the tips the employee receives."  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (quoting *Jin v. Pacific Buffet House*, No. 06-CV-579, 2009 WL 2601995, at *4 (E.D.N.Y. Aug. 24, 2009)).  "These two prerequisites . . .  are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage."  *Copantitla*, 788 F. Supp. 2d at 287 (quotations omitted).

Here, Plaintiff clearly alleges facts that demonstrate that at least one prerequisite to "tip credit" eligibility was not satisfied, to wit: Plaintiff asserts that he "was never notified by Defendants that his tips were being included as an offset for wages." Compl. ¶ 42. Plaintiff further asserts that he never received "daily or weekly accountings" of his wages—which, along with Defendants' purported failure to provide wage notices and wage statements (*id.* ¶¶ 45-46) clearly show that the Defendants failed to inform Plaintiff of the "tip credit" provision. *See Copantitla*, 788 F. Supp. 2d 253 at 287.

As the two prerequisites are strictly construed, the Court finds that Defendants are not eligible for a "tip credit" under either the FLSA or the NYLL, and may not utilize Plaintiff's tips to offset his minimum wages (and subsequently his minimum wage damages). *See Cabrera*, 412 F. Supp. 3d 167 at 182.

### iii.    *Timely Payment*

Plaintiff's Fifth Cause of Action alleges that Defendants violated NYLL § 191 by failing to pay Plaintiff "on a regular weekly basis." Compl. ¶ 84. In pertinent part, the NYLL provides that "a manual worker shall be paid weekly and not later that seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191.

The Court does not recommend awarding Plaintiff damages for Defendants violation of NYLL § 191 because that section "only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a particular wage." *Pastrana v. Mr. Taco LLC*, No. 18-CV-09374 (GBD) (SN), 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022), *report and recommendation adopted*, WL 16857107 (S.D.N.Y. Nov. 10, 2022) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010)) (emphasis in original).

Additionally, even had Plaintiff's job responsibilities qualified him as a "manual worker" under NYLL § 191, the only allegation pertinent to a claim of untimely payment—that "Defendants did not pay Plaintiff [] on a regular weekly basis," Compl. ¶ 84—is merely conclusory. *See, e.g.*, *de Jesus v. P&N Cuisine Inc.*, No. 20-CV-3619 (RA), 2021 WL 2380065, at *4 (S.D.N.Y. June 10, 2021) (concluding same). Plaintiff does not allege any injuries in relation to late payments, and if he had, those claims would be "coextensive with, and derivative of" his FLSA and NYLL claims. *Myers*, 624 F.3d 537 at 546.

Accordingly, the Court concludes that Plaintiff has failed to establish Defendants' liability under NYLL § 191.

### D.    Relief

Because Plaintiff has established Defendants' liability as to Plaintiff's minimum wage claims, the Court must determine whether Plaintiff is entitled to the relief he requests. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (citations and quotation marks omitted). Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK) (VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

"That being said, because under FLSA the burden is on an employer properly to record hours, a plaintiff need not compute FLSA damages with precision." *Lopez v. Royal Thai Plus*,

LLC, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (cleaned up), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate."  *Brito*, 2022 WL 875099, at *15 (collecting cases).  Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period."  *Lopez*, 2018 WL 1770660, at *10.

### i.  *Collective Action Certification*

Plaintiff's Complaint states that he seeks to prosecute this action as a FLSA "collective action."  *See* Compl.  ¶¶ 62–64, p. 14.  The FLSA authorizes employees to sue on behalf of themselves and all other similarly situated employees.  29 U.S.C. § 216(b).  To join in the action, other employees must "opt in" by written consent.  *Id*.  If the plaintiff makes a factual showing that they and the potential opt-in plaintiffs were victims of a common unlawful policy or plan, the court conditionally certifies the action as a FLSA collective action by sending notice to potential plaintiffs who may be similarly situated.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  After those plaintiffs have opted in, the court determines whether they are in fact similarly situated to the named plaintiff.  *Id*.

Since Plaintiff did not reiterate his collective action certification request in his second Motion for Default Judgment, the Court considers that request waived.  *See, e.g., Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC) (RLM), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because Plaintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the Court considers Plaintiff's collective action request waived.");  *Zabrodin*, 2023 WL 8009319, at *10 (finding that the plaintiff waived a collective action

certification request by failing to reiterate this request in the motion for default judgment).

Additionally, where the plaintiff seeks to certify a FLSA collective action and the defendant defaults or in similar situations, other courts in this Circuit have entered default judgments in favor of only the named plaintiffs and have left the defendants the opportunity to defend themselves against claims by future plaintiffs. *See, e.g., Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 16-CV-4179 (KAM)(CLP), 2017 WL 10845064, at *2 (E.D.N.Y. Sept. 30, 2017); *Galicia*, 2015 WL 1469279, at *1 (granting default judgment and deeming collective action certification request waived); *Charvac v. M&T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA)(RER), 2013 WL 6711485, at *3 (E.D.N.Y. Dec. 18, 2013) (denying motion without prejudice and granting leave to amend where plaintiff purported to add "opt-in" plaintiffs unnamed in the complaint). Here, the Court will proceed only with the named Plaintiff—Juan Sebastian Diaz Saavedra. Thus, this Report and Recommendation applies only to Mr. Saavedra and not to any of Defendants' other employees.

### ii.    *Minimum Wage Damages*

"Both the FLSA and the NYLL require New York employers to pay their employees at least the respective federal, state, or city minimum wage, whichever is higher, for every hour worked." *Brito*, 2022 WL 875099, at *16. "Under both the FLSA and NYLL, plaintiffs are entitled to overtime compensation of at least one and one-half times their regular hourly rate." *Id*. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Id*.

From "approximately October 2015" to October 16, 2019, Plaintiff worked from "approximately 10:00 p.m. until on or about 4:00 a.m." or six hour per day, five days a week, and

"typically 30 hours per week." Saavedra Aff. ¶ 11.  Plaintiff asserts that Defendants did not

Plaintiff *any* wages during this period.  *Id.* ¶ 14 (emphasis added).  The Court already determined

that Plaintiff is entitled to the minimum wage rates set forth in the NYLL and its regulations

because they were higher than the federal minimum wage rate during the relevant period.  *See*

Section III.C.ii, *supra*.

At all relevant times the federal minimum wage was $7.25 per hour.[2] 29 U.S.C. §

206(a)(1)(C) (setting a minimum wage of $7.25 as of July 24, 2009); *Fermin*, 93 F. Supp. 3d at 41

(indicating same). The New York City minimum wage, however, varied throughout the course of

Plaintiff's employment.[3]  *See also* Dkt. No. 29, at 6-7.  From October 31, 2015 to December 31,

2015, the New York City minimum wage was $8.75 per hour.  N.Y. Lab. Law § 652(1).  From

January 1, 2016 to December 31, 2016, the New York City minimum wage was $9.00 per hour.

*Id*.  From January 1, 2017 to December 31, 2017, the minimum wage was $10.50 per hour.  N.Y.

Lab. Law § 652(1)(a)(ii).  From January 1, 2018 to December 31, 2018, the New York City

---

[2] The Court notes that two distinct employment periods are at issue here: October 31, 2015 to October 16, 2019 and August 1, 2021 to September 1, 2021.  *See* Compl. ¶¶38-40; Dkt. No. 28-9.

[3] The Court further notes that Plaintiff avails himself of the minimum wage requirements for "small employers."  *See* Dkt. No. 29, at 6-7; N.Y. Lab. Law § 652(1)(a)(ii).  The Labor Law, in relevant parts, defines "small employers" as an "employer of ten or less employees." *Id*.  But Plaintiff's sworn affidavit notes that "Music Box had a staff of approximately 9-12 employees while I worked there." *See* Saavedra Aff. ¶8.  Where a plaintiff's complaint is silent as to the employer's size, district courts have taken varying approaches to determine the proper minimum wage rate to apply in a default judgment.  One court determined plaintiffs would be awarded at the minimum wage rate of a large employer because of defendants' default.  *See Sanchez v. Jyp Foods Inc.*, No. 16-cv-4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) ("[I]n light of defendants' default, the Court gives plaintiffs the benefit of the doubt and applies the [rate for large employers].").  Other courts have declined to award plaintiffs the rate of large employers if they do not attest to the number of employees that worked for the defendant.  *See Anzurez v. La Unica Caridad Inc.*, No. 20-cv-3828 (JMF)(GWG), 2021 WL 2909521, at *4 (July 12, 2021) (finding plaintiff did not prove their employer employed 11 or more employees and therefore "must be compensated at the rate for small employers[.]"), *report and recommendation adopted*, 2021 WL 3173734 (S.D.N.Y. July 27, 2021).  Here, the Court credits Plaintiff's affidavit which complements the omission in Plaintiff's complaint and finds that the affidavit supports an award at the rate of small employers.

minimum wage was $12.00 per hour.  *Id.*  From January 1, 2019 to October 31, 2019, the New York City minimum wage was $13.50 per hour.  *Id.*; *see Anzurez v. La Unica Caridad Inc*., No. 20-CV-3828 (JMF) (GWG), 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021), *report and recommendation adopted*, 2021 WL 3173734 (S.D.N.Y. July 27, 2021).

Plaintiff is thus entitled to the following amount of unpaid minimum wage for working an average of 30 hours per week, as shown in the following table:

| Pay Period | | Weeks[4] | Hours Per Week[5] | Min. Wage | Lawful Weekly Pay[6] | Credited Weekly Pay[7] | Underpayment per Week[8] | Total Unpaid Wages[9] |
|---|---|---|---|---|---|---|---|---|
| From | To | | | | | | | |
| 10/31/2015 | 12/31/2015 | 9 | 30 | 8.75 | 262.5 | 0 | 262.5 | $2,362.50 |
| 1/1/2016 | 12/31/2016 | 52 | 30 | 9 | 270 | 0 | 270 | $14,040.00 |
| 1/1/2017 | 12/31/2017 | 52 | 30 | 10.5 | 315 | 0 | 315 | $16,380.00 |
| 1/1/2018 | 12/31/2018 | 52 | 30 | 12 | 360 | 0 | 360 | $18,720.00 |
| 1/1/2019 | 10/16/2019 | 41 | 30 | 13.5 | 405 | 0 | 405 | $16,605.00 |
| | | | | | | | | $68,107.50 |

*See also* Dkt. No. 28-9.

---

[4] "Weeks" refers to the number of weeks during the corresponding dates of employment in each row.

[5] "Hours Per Week" is calculated based on Plaintiff's own representations.  *See* Dkt. No. 1, ¶ 36; Dkt. No. 28-9.

[6] "Lawful Weekly Pay" refers to the weekly wages Plaintiff should have received. Plaintiff asserts that he worked an average of 30 hours per week during the period between October 2015 and October 2019. Saavedra Aff. ¶ 11.  For each time period, the Court calculated the following: ((30 hours x the applicable minimum wage) x (number of weeks)).

[7] "Credited Weekly Pay" refers to the average wages Plaintiff was actually paid.

[8] "Underpayment Per Week" refers to the difference between the lawful weekly pay Plaintiff should have received minus the average weekly pay he actually received (*i.e.*, Lawful Weekly Pay – Credited Weekly Pay).

[9] "Total Unpaid Wages" refers to the total unpaid minimum wage due to Plaintiff.  This amount is calculated by multiplying the number of weeks per time period by the amount of unpaid wages due to Plaintiff (i.e., Weeks Column multiplied by Underpayment Per Week column).

Additionally, from "approximately August 2021 until on or about September 12, 2021," Plaintiff worked from "approximately 10:00 p.m. until on or about 4:00 a.m., one day a week (typically 6 hours per week)." Saavedra Aff. ¶ 12. During this period, Defendants only paid Plaintiff $30.00 per night, for three nights of work. *Id.* ¶¶ 13, 15. During this period, the applicable minimum wage was $15.00 per hour. N.Y. Lab. Law § 652(1)(a)(ii).

Plaintiff is also entitled to the following amount of unpaid minimum wage, as shown in the following table:

| Pay Period | | Weeks | Hours Per Week | Min. Wage | Lawful Weekly Pay | Credited Weekly Pay | Underpayment per Week | Total Unpaid Wages |
|---|---|---|---|---|---|---|---|---|
| From | To | | | | | | | |
| 8/1/2021 | 8/7/2021 | 1 | 6 | 15 | 90 | 30 | 60 | $60.00 |
| 8/8/2021 | 8/14/2021 | 1 | 6 | 15 | 90 | 30 | 60 | $60.00 |
| 8/15/2021 | 8/21/2021 | 1 | 6 | 15 | 90 | 30 | 60 | $60.00 |
| 8/22/2021 | 9/12/2021 | 3 | 6 | 15 | 90 | 0 | 90 | $270.00 |
| | | | | | | | | $450.00 |

*See also* Dkt. No. 28-9.

Accordingly, the Court respectfully recommends that Plaintiff should be awarded $68,107.50 for the first employment period plus $450.00 for the second employment period totaling $68,557.50 in unpaid minimum wages.

### iii.    *Liquidated Damages*

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1). The plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

Here, Plaintiff repeatedly alleges that Defendants' misconduct was willful and that Defendants did not act in good faith. *See* Compl. ¶¶ 54, 57, 59, 63, 70, 75. Moreover, Defendants have not answered or otherwise appeared in this action, so they have forgone their opportunity to prove good faith. *See Zabrodin*, 2023 WL 8009319, at *11 (citing *Chen v. Oceanica Chinese Rest.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023). Thus, the Court finds Plaintiff entitled to liquidated damages for Defendants' violations of the FLSA and NYLL.

As Plaintiff's total compensatory damages are $68,557.50, Plaintiff is entitled to recover "an additional equal amount as liquidated damages" in the amount of $68,557.50. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 125 (E.D.N.Y. 2011)

### iv.    *Pre-Judgment Interest*

Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does. *Fermin*, 93 F. Supp. 3d at 48. To avoid giving the plaintiff a windfall, however, courts award pre-judgment interest only on the compensatory damages award and not on the liquidated damages award. *Id*. at 49. Courts calculate pre-judgment interest on a NYLL award at a rate of 9% per year. N.Y. C.P.L.R. § 5004; *Zabrodin*, 2023 WL 8009319, at *12. For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date. N.Y. C.P.L.R. § 5001(b). Courts have discretion to determine a reasonable date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date. *Elghourab v. Vista JFK, LLC*, No. 17-CV-911 (ARR) (ST), 2019 WL 2431905, at *12 (E.D.N.Y. Jun. 11, 2019).

Here, for ease of calculation and transparency, the Court sets March 23, 2017, as the intermediate date for Plaintiff because that date marks the halfway point in his employment with Defendants during the relevant period.  Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded $42,160.04 in pre-judgment interest from March 23, 2017, through January 19, 2024.  This amount will increase by $16.90 per day[10] until the date that judgment is entered by the Clerk of Court.

### v. *Attorneys' Fees and Costs*

Plaintiff seeks attorneys' fees in the amount of $3,497.50 based on 15.6 hours of work for attorneys Frank Palermo, Catalina Sojo, Mary Bianco, and an unidentified paralegal.  *See* Dkt. No. 28, at 6-7; Dkt. No. 28-8.   Plaintiff includes timesheets in support of this application.  *See id.*

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).   "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD)(PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

---

[10] Pre-judgment interest is calculated using the following formula: (total compensatory damages due to plaintiff) multiplied by (.09/365) multiplied by (number of days from midpoint date to the date the Clerk of the Court enters judgment) or ($68,557.50 × .09/365).  *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 7684775, at *7, n.6 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023) (outlining the pre-judgment interest calculation).

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022) (internal citations and quotation marks omitted). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up).  "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up).  Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id.* "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, the record shows that an award of attorneys' fees is appropriate.

### 1.    Hourly Rate

Plaintiff asserts that the Court should award attorneys' fees based on the following hourly rates: $350.00 for managing attorney Catalina Sojo; $350.00 for associate attorney Frank Palermo, $325.00 for associate attorney Mary Bianco, and $125.00 for paralegal work from unidentified individuals.  *See* Dkt. No. 28, at 6-7; Dkt. No. 28-8.

"Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Esquivel*, 2023 WL 6338666, at *17 (quoting *Diaz*

*v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM) (RER), 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022)).  The FLSA and NYLL are "straightforward" and "relatively simple," and the work in this case is considered "particularly simple because it [is] resolved on a motion for default judgment."  *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *12 (E.D.N.Y. Mar. 30, 2022).

Ms. Sojo completed her legal education in 2019 and has approximately three years of litigation experience.  Dkt. No. 28.  She seeks $350 per hour.  *See id.*  The $350 per hour range, however, is what courts generally award partners at law firms.  Considering that Ms. Sojo was largely responsible for reviewing documents (*see* Dkt. No. 28-8) and the fact that Ms. Sojo has only been a litigation for approximately three years, the Court finds that a reasonable rate is $175 per hour.  *See Morales* 2023 WL 7684775, at *8 (lowering Ms. Sojo's rate from $350 per hour to $175 per hour); *Sevilla*, 2022 WL 954740, at *12 (concluding same).

Mr. Palermo graduated from law school in 2017 and is described as an associate attorney.  *See* Dkt. No. 28.  Prior to joining her current position in 2022, Mr. Palermo focused his practice on personal injury and construction accidents.  *See* Dkt. No. 28.  Here, it appears that Mr. Palermo only reviewed the docket and prepared the initial default documents.  Dkt. No. 28-8.  The initial Motion for Default, however, was denied due to lack of compliance with multiple procedural rules.  In light of Mr. Palermo's role in this litigation and his experience as an Associate, the Court finds that $200.00 per hour is appropriate. *See Morales*, 2023 WL 7684775, at *8 (concluding same).

Ms. Bianco graduated from law school in 2021 and is described as an associate who, prior to obtaining her current position in May 2023, focused on immigration law.  Dkt. No. 28.  Ms. Bianco's time is billed at $325.00 per hour.  Dkt. No. 28-8.  Again, this rate is high, for the reasons

as stated above for Ms. Sojo and Mr. Palermo.  In light of the prevailing hourly rates in this district, the Court finds that $150 per hour is a reasonable rate for an attorney with Ms. Bianco's experience.

Finally, the billing records state that the unidentified paralegals are billed at a rate of $125.00 per hour.  Dkt. No. 28-8.  In the Eastern District of New York, $125 per hour for paralegal work in a default wage and hour case is excessive.  *See Morales*, 2023 WL 7684775, at *8 (citing *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586 (ERK), 2022 WL 17820103, at *8 (E.D.N.Y. Oct. 20, 2022) (collecting cases for the proposition that in default judgment cases, paralegals are typically awarded a $75 hourly rate).  Consequently, the Court recommends that the paralegal hourly rate be lowered to $75 per hour.

Next, the court must determine the reasonableness of the number of hours expended by counsel.  *Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *9 (E.D.N.Y. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 5259056 (Sept. 30, 2020).  Courts examine the contemporaneous time records to exclude what appears to be excessive or unnecessary hours and "with a view to the value of the work product of the specific expenditures to the client's case."  *Id.*  (citations and quotations omitted).  Here, Plaintiff's counsel claims that they worked 15.6 hours.  Dkt. No. 28-8.  The time records include sufficient notes as to what each hour entailed (*id.*) and the Court does not find that the work is excessive.

Therefore, the reasonable attorneys' fee award is calculated as follows:

| Timekeeper | Requested Rates | Approved Rates | Hours | Fees |
|---|---|---|---|---|
| Catalina Sojo | 350 | 175 | 1.1 | $192.50 |
| Frank Palermo | 350 | 200 | 4 | $800.00 |
| Mary Bianco | 325 | 150 | 2 | $300.00 |
| Paralegals | 125 | 75 | 8.5 | $637.50 |
| | | **Total Attorneys' Fees** | | $1930.00 |

Accordingly, the Court respectfully recommends that Plaintiff's counsel be awarded $1,930.00 in attorneys' fees.

## 2.    Costs

When a party is awarded attorney's fees, it is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to then clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted).  Plaintiff seeks to recover costs of $402 for the filing fee, and $75 for service of process for a total of $477.00.  The filing fee is noted on the docket.  *See* Dkt. No. 1.  Since the costs incurred here are routinely recoverable, the Court recommends awarding plaintiff costs in the requested amount of $477.00.  *Montanes*, 2022 WL 17820103, at *8.

## vi.    *Post-Judgment Interest*

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  *Id.*

Thus, the Court respectfully recommends that Plaintiff be awarded statutory post-judgment interest. *See Fermin*, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

### vii.    *Fifteen Percent Increase Penalty*

Plaintiff seeks an automatic increase of 15 percent for any unpaid amount of the judgment still pending after 90 days following the entry of judgment. Dkt. No. 28-10. Where there is a cause of action under the NYLL, "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4). "The increase applies only to damages awarded under state law." *Esquivel*, 2023 WL 6338666, at *16. (citations omitted).

Accordingly, the Court respectfully recommends that Plaintiff's damages awarded under the NYLL should be increased by 15 percent if Defendants fail to timely satisfy the judgment upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later.

The Court respectfully recommends that the damages outlined in the following chart be awarded to Plaintiff:

| Category | Amount Due |
|---|---|
| Compensatory Damages (Unpaid Minimum Wage) | $68,557.50 |
| Liquidated Damages | $68,557.50 |
| Prejudgment Interest | $42,160.04 |
| Attorneys' Fees | $1,930.00 |
| Costs | $477.00 |
| **Total Amount Due (excluding post judgment interest and a fifteen percent increase penalty)** | $181,682.04 |

IV.    **Conclusion**

In sum, the Court finds that Plaintiff sufficiently alleges Defendants' violations of the FLSA and NYLL.   Accordingly, the Court respectfully recommends **GRANTING in part** Plaintiff's motion for default judgment as follows: (1) a default judgment should be entered against Defendants; and (2) Plaintiff should be awarded damages which include: (a) $68,557.50 for unpaid minimum wage; (b) $68,557.50 in liquidated damages; (c) $42,160.04 in prejudgment interest to increase by $16.90 per day until the entry of judgment; (d) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (e) attorneys' fees of $1,930.00; and (f) costs of $477.00, for a total award of $181,682.04. The Court further respectfully recommends that Plaintiff should be awarded an automatic increase of 15 percent as provided by New York Labor Law § 198(4).   Additionally, the Court respectfully recommends dismissal of Plaintiff's Third and Fourth causes of action without prejudice for lack of standing.

A copy of this Report and Recommendation is being electronically served on counsel.   This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants and to file proof of service on ECF by January 22, 2024.

Copies shall be served at the following addresses:

DOM MUSIC BOX INC.
c/o Edison Ortiz.
934 Pacific Street
Baldwin, NY 11510-4430

DOM MUSIC BO INC. (D/B/A MUSIC BOX)
40-08 74th Street
Elmhurst, NY 11373-5602

EDISON ORTIZ
934 Pacific Street
Baldwin, NY 11510-4430

36

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Vitaliano.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:        Brooklyn, New York
              January 19, 2024

                              ___/s/ Joseph A. Marutollo___
                              JOSEPH A. MARUTOLLO
                              United States Magistrate Judge